FILED & ENTERED

DEC 15 2023

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY moser      DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>Jeremy Taylor Johnson<br><br><br><br>Debtor(s). | CHAPTER 7<br><br>Case No.:  6:22-bk-11736-RB<br>Adv No:   6:22-ap-01073-RB |
| Blue Green Plantation Envelope Enterprises, LLC, Grant Wieczorek<br><br>Plaintiff(s),<br>v.<br><br>Jeremy Taylor Johnson<br><br><br>Defendant(s). | **NOTICE OF TENTATIVE RULING GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT UNDER § 523(a)(19)**<br><br>Date:          December 14, 2023<br>Time:         2:00 p.m.<br>Courtroom:  303 |

At the above date and time, the Court held a hearing on the *Motion for Summary Judgment* (the "MSJ"), filed by Plaintiff Grant Wieczorek.  Appearances are as noted on the record for the hearing.  At the hearing, the Court adopted its tentative ruling on the MSJ.  A copy of the Court's tentative ruling is attached to this cover page.

//

-1-

**Factual and Procedural History**

Debtor Jeremy Johnson ("Debtor" or "Defendant") was the managing member of a California limited liability companies called Target Equity, LLC ("Target Equity") and was a control person for purposes of the California securities laws. *Motion for Summary Judgment,* Ex. B, ECF.doc. 31. The purpose of the securities offerings were to raise money to fund the development, construction, and purchase of a cannabis-related businesses. *Motion for Summary Id.* at 4:2-4, ECF doc. 31. Specifically, Target Equity claimed it was raising money to purchase interests in Zabala Farms of Salinas, LLC ("Zabala Farms") which operated a marijuana farm and cultivation business. *Id.* at 4:4-6, ECF doc. 31.

Plaintiff contends that he first became aware of the offering while he was on vacation in Cabo San Lucas. *Id.* at 4:7-18, ECF doc. 31. While checking his Facebook page, an advertisement for a marijuana business popped up. *Id.* at 4:8-9, ECF doc. 31. Plaintiff states he was intrigued, and he clicked on the ad, and provided his contact information. *Id.* at 4:9-10, ECF doc. 31.

Within a day Plaintiff contends he was put in touch with Debtor, who forwarded Plaintiff some basic financial information on the offering. *Id.* at 4:11-12, ECF doc. 31. Debtor then set up a conference call with Plaintiff and Debtor's brother Todd Johnson ("Debtor's brother" or "Todd") to go over details of the offerings. *Id.* at 4:12-14, ECF doc. 31. Over the course of the one-hour phone call, Plaintiff contends that Debtor's brother described the Zabala Farm operation, and invited Plaintiff to attend an investor presentation, and tour the facilities if he was interested. *Id.* at 4:15-17, ECF doc. 31.

Based upon Defendant's representations of a successful legal marijuana operation, Plaintiff contends he flew up to the San Francisco Bay area of California upon his return from Mexico and attended a presentation hosted by Debtor and Debtor's brother. *Id.* at 4:1-20, ECF doc. 31. Plaintiff states the seminar was attended by five other prospective investors. *Id.* at 4:20-21, ECF doc. 31. After the seminar Debtor's brother then took Plaintiff on a tour of the farm and the cultivation facility. *Id.* at 4:21-22, ECF doc. 31.

Several weeks later, Plaintiff alleges Debtor and Debtor's brother contacted Plaintiff to ask him if he wanted to make an investment in the marijuana farm. *Id.* at 4:23-5:1, ECF doc. 31. Plaintiff contends Debtor and Debtor's brother represented the farm was selling 3,000 pounds of marijuana a month, and the operation needed a retail operation to retain more of the earnings. *Id.* at 5:2-3, ECF doc. 31. Based on their representations, Plaintiff committed to making a $1,324,700 investment to Target Equity—an investment which Plaintiff made on March 7, 2018. *Id*. at 5-6:17, ECF doc. 31.

*Plaintiff's Riverside State Court Action*

On May 29, 2019, Plaintiff filed a complaint for damages in the Riverside Superior Court ("Riverside Court"), alleging damages related to allegations of Defendant's violation of California securities law ("Riverside Complaint"). *Id.*, Ex. C. On June 6, 2019, Plaintiff served notice of the Riverside Complaint on Debtor (the "Riverside State Court Action"). *Id.*, Ex. D. On August 8, 2019, default was entered against Debtor and the other defendants to the action. *Id.*, 6:16-17.

On October 28, 2019, the Riverside Court held a prove up hearing where Plaintiff appeared and testified. *Id.*, Ex. A, 1:21-22. Thereafter, on October 31, 2019, the Riverside Court entered Findings of Fact, Conclusions of Law ("Riverside FF & CL") wherein the Riverside Court made findings that Defendant and his brother were "control persons" of the corporate defendants Target Equity, LLC and GPA Enterprises, LLC under California Corporations Code §§ 25019 and 25504. *Motion for Summary Judgment*, Ex. B. ECF doc. 31 The Riverside Court also found that Defendant, among others, sold unqualified securities in violations of Corporations Code §§ 25110 and 25503, and entered judgment in favor of Plaintiff, including a joint and several judgment against Debtor in the amount of $1,465,948.96 ("Riverside Judgment"). *Id.*, Ex. A, pgs. 2-3; Ex. B. ECF doc. 31-1.

*Debtor's Bankruptcy Filing*

On May 8, 2022, Debtor filed a voluntary chapter 7 petition, bankruptcy case 6:22-bk-11736-RB.

*Plaintiff's Adversary Proceeding Against Debtor*

On August 10, 2022, Plaintiff filed this adversary proceeding, seeking a judgment under 11 U.S.C. § 523(a)(19) that the Riverside Judgment is non-dischargeable.

*Plaintiff's Motion for Summary Judgment Against Debtor*

On August 4, 2023, Plaintiff filed a Motion for Summary Judgment against Defendant. ECF doc. 31. On August 29, 2023, Defendant filed an Opposition to Motion for Summary Judgment, ECF doc. 34, and Defendant's Objections to Evidence, ECF doc. 35. On September 4, 2023, Plaintiff filed a Reply to Defendant's Opposition to Summary Judgment. ECF doc. 39. Thereafter, on September 7, 2023, Defendant filed a *Request for Additional Briefing*, ECF doc. 43.

After considering the above-referenced pleadings, the Court entered an *Order Continuing Hearing on Motion for Summary Judgment*, in which it set a supplemental briefing schedule, and continued the hearing on the Motion for Summary Judgment and the adversary status conference to October 24, 2023. ECF doc. 44; 52. On September 26, 2023, Defendant filed his *Supplemental Objections to Evidence*, ECF doc. 49. Plaintiff's *Reply to Defendant's Supplemental Objections* was filed on October 2, 2023. ECF doc. 51.

After considering the arguments made by the parties at the hearing held on October 24, 2024, the Court ordered a second round of supplemental briefing to allow Plaintiff to clarify the amount of damages for which he was seeking a determination of nondischargeability, and for Defendant to clarify his argument about what portions of the record the Court could consider when determining nondischargeability of a debt under 11 U.S.C. § 523(a)(19), specifically is it relates to issue preclusion.

On November 7, 2023, Defendant filed his *Second Supplemental Brief*, ECF doc. 56. Plaintiff's *Reply to Debtor's Supplemental Brief* was filed on November 20, 2023. ECF doc. 60.

**Legal Analysis**

### 1. *Summary Judgment*

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (incorporated by Fed. R. Bankr. P. 7056).

The moving party has burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which might affect the outcome of the suit." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). The inference drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valadingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Insurance Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir.1981).

### 2. *Issue Preclusion and Default Judgment*

Issue preclusion applies in dischargeability proceedings **to preclude relitigation of state court findings relevant to exceptions to discharge**. *Grogan v. Garner*, 498 U.S. 279, 284, n. 11 (1991); *Harmon v. Kobrin (In re Harmon),* 250 F.3d 1240, 1245 (9th Cir. 2001). (emphasis added) And a bankruptcy court may apply the doctrine to an existing state court judgment as the basis for granting summary judgment. *See Khaligh v. Hadaegh (In re Khaligh*), 338 B.R. 817, 832 (B.A.P. 9th Cir. 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007). Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). In this case, we apply California law.

In California, the party asserting issue preclusion has the burden of establishing the following "threshold" requirements:

(1) the issue is identical to that decided in a former proceeding;
(2) the issue was actually litigated in the former proceeding;
(3) the issue was necessarily decided in the former proceeding;
(4) the decision in the former proceeding is final and on the merits; and
(5) the party against whom preclusion is sought is the same as, or in privity with, the party to the former proceeding.

*Lucido v. Super. Ct.,* 51 Cal. 3d 335, 341 (Cal. 1990).

Even if all five threshold requirements are satisfied, California law also requires that application of the doctrine be consistent with the public policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation[.]" *Id. at 342-43*.

California law accords preclusive effect to default judgments, "at least where the judgment contains an express finding on the allegations." *Gottlieb v. Kest,* 141 Cal. App. 4th 110, 149 (Cal. Ct. App. 2006); *see also Green v. Kennedy (In re Green),* 198 B.R. 564, 566 (B.A.P. 9th Cir. 1996). The rationale behind finding that default judgments can be preclusive is that defendants who are served with a summons and complaint but fail to respond are presumed to admit all well-pleaded facts in the complaint. *In re Harmon,* 250 F.3d at 1247. Therefore, a default judgment:

> conclusively establishes, between the parties so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action, and every fact necessary to uphold the default judgment[.]

*Gottlieb*, 141 Cal. App. 4th at 149.

### 3. Exceptions to Discharge

Although debts arising prior to the filing of a bankruptcy petition will generally be discharged, the exceptions to discharge under 11 U.S.C. § 523(a) reflect a congressional decision to exclude certain liabilities from discharge so as to ensure the fresh start policy of the Bankruptcy Code is only available to the "honest but unfortunate debtor[s]. *Rodriguez v. Hotchkiss (In re Rodriguez)*, 649 B.R. 773, 780 (B.A.P. 9th Cir. 2023) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 111 S. Ct. 654 (1991). Accordingly, exceptions to discharge under Section 523 prevent a debtor from receiving a complete fresh start. *Sherman v. SEC (In re Sherman)*, 658 F.3d 1009, 1015 (9th Cir. 2011).

### 4. 11 U.S.C. § 523(a)(19)

In 2002, as part of the Sarbanes-Oxley Act, the Bankruptcy Code was amended to add Section 523(a)(19) as an additional exception to discharge which prohibits debtors from discharging debts for securities violations. *In re Rodriguez*, 649 B.R. at 780.

Specifically, Section 523(a)(19) does not discharge an individual debtor from a debt that—

> (A) is for—
> (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; **or**
> (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; **and**

      (B) results, before, on, or after the date on which the petition was filed, from—
          (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
          (ii) any settlement agreement entered into by the debtor; or
          (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19) (emphasis added).

Section 523(a)(19)(A) includes both securities violations under § 523(a)(19)(A)(i) and common law fraud in securities transactions under § 523(a)(19)(A)(ii). *Williams v. Sato (In re Sato)*, 512 B.R. 241, 252 (Bankr.C.D. Cal. 2014) *citing Frost v. Civiello (In re Civiello)*, 348 B.R. 459, 464 (Bankr.N.D. Ohio 2006).

The legislative history demonstrates an intention to apply Section 523(a)(19) *as broadly as possible in pending bankruptcy cases. Smith v. Gibbons (In re Gibbons)*, 289 B.R. 588, 593 (Bankr. S.D.N.Y. 2003) (emphasis added). As set forth by Senator Leahy in his section-by-section analysis, Section 523(a)(19) is meant to "prevent wrongdoers from using the bankruptcy laws as a shield and *to allow defrauded investors to recover as much as possible.*" *Id.* at 593 (quoting 148 Cong. Rec. S7418-19 (2002) (statement of Sen. Leahy) (emphasis added). Significantly, by adding Section 523(a)(19), Congress intended to eliminate the need to relitigate securities violations in bankruptcy court by making judgments and settlements based upon securities law violations nondischargeable. *In re Rodriguez*, 649 B.R. at 781 (quoting S. Rep. No. 107-146 at 2-8 (2002)).(emphasis added)

    a. Comparing In re Rodriguez and In re Sherman

In *In re Rodriguez*, judgment creditors, who were investors in failed business of which the Chapter 7 debtor was treasurer, chief financial officer (CFO), and a director, filed adversary complaint, seeking determination that prepetition judgment debt fell within the discharge exception under 11 U.S.C. § 523(a)(19), for any debt that is for the violation of securities laws. *In re Rodriguez*, 649 B.R. 773, 778-779 (B.A.P. 9th Cir. 2023). The bankruptcy court, after conducting an issue preclusion analysis under Nevada law, granted summary judgment to the judgment creditors and excepted the judgment debt from debtor's discharge. *Id.* at 779.

On appeal by the debtor, the Bankruptcy Appellate Panel of the Ninth Circuit (the "BAP") held that the bankruptcy court did not abuse its discretion in determining that, under Nevada law, issue preclusion barred debtor from challenging the state court's determination that he violated Nevada securities law. *Id.* at 781. The BAP also explained that, *even in the absence of issue preclusion*, the judgment debt fell within the discharge exception for any debt that is for the violation of securities laws. *Id.* at 781-782. (emphasis added) Specifically, for the discharge exception for any debt that is for the violation of securities laws to apply under § 523(a)(19), the debtor need only be responsible for the violation, and there is no requirement that debtor be the most culpable or "primarily liable" for it. *Id.* at 782.

In *In re Sherman*, the debtor was the attorney who represented companies in an enforcement action brought by the Securities and Exchange Commission ("SEC"). *Sherman v. SEC (In re*

*Sherman)*, 658 F.3d 1009, 1010 (9th Cir. 2011).  As part of the enforcement action, the court-appointed receiver ordered the debtor to disgorge money he had received and retained, but had not earned, in a separate contingency case. *Id.*  Thereafter, the debtor and his wife filed a petition for Chapter 7 bankruptcy. *Id. at 1011.*  The bankruptcy court held that *11 U.S.C. § 523(a)(19)* did not apply to except the debt from discharge. *Id.*  The district court reversed. *Id.*

On appeal, the Ninth Circuit held that § 523(a)(19) prevented the discharge of debts for securities-related wrongdoings only in cases where the debtor was responsible for that wrongdoing. *Id. at 1012.*  The Ninth Circuit explained that debtors who may have received funds derived from a securities violation remained entitled to a complete discharge of any resulting disgorgement order. *Id. at 1016-1019.*

The distinguishing fact between *In re Rodriguez* and *In re Sherman* is whether the debtor was the party responsible for the violation of the state or federal securities law.  The debtor in *Rodriguez* was the was treasurer, chief financial officer (CFO), and a director.  The debtor in *Sherman*, on the other hand, was merely the attorney who represented parties to an SEC enforcement action and did not himself engage in violating state or federal securities laws.

Here, the Riverside Judgment makes clear that Debtor was one of the parties, along with GPA Enterprises and Anthony Todd Johnson, who engaged in violating California securities laws, and not merely the recipient of proceeds from the violation.

    **5. *Applying Issue Preclusion to § 523(a)(19)***

        a. *§ 523(a)(19): Judgment Entered for violation of California Securities Laws, Prior to Debtor's Bankruptcy Filing*

            i. **Identical Issues**

            <u>Were the elements required to establish a Violation of State Securities law in the Riverside State Court Action identical to those Required under § 523(a)(19)?</u>

Plaintiff bears the burden of proof to establish each of two elements by a preponderance of the evidence: 1) their claim was for a debt resulting from a violation(s) of state securities laws; and 2) the subject debt resulted from a "judgment, order, consent order or decree in a federal or state judicial or administrative proceeding or any settlement agreement entered by the debtor or any court or administrative order for the payment of damages, a fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost or other payment owed by the debtor." *See Wilkes v. Cancelosi (In re Cancelosi)*, 456 B.R. 515, 522 (Bankr. D. Or. 2011).

Here, it is undisputed that the Riverside Court entered a judgment against Debtor for a violation of California securities laws, which was based on evidence submitted at the hearing and Plaintiff's motion for default judgment. *See Motion for Summary Judgment,* Ex. A.  The Riverside Court also entered *Findings of Fact and Conclusions of Law*, specifically finding that "Defendants Anthony Todd Johnson and Jeremy Taylor Johnson were control persons of the corporate Defendants" and that "Defendants sold unqualified, non-exempt securities to Plaintiffs" against California law. *See Id.*, Ex. B. internal 1:27-28.

Here, it is also undisputed that the Riverside Court complaint resulted in the entry of a judgment against Debtor for violation of California securities laws before Debtor filed for bankruptcy relief with this Court. The Riverside Judgment for violation of California securities laws against Defendant was entered on entered on November 4, 2019. *See Motion for Summary Judgment,* Ex. A. Debtor then filed for bankruptcy relief on May 8, 2022, case number 6:22-bk-11736-RB, a date after the entry of the Riverside Judgment for violation of California securities laws.

Notably, Debtor concedes that this element is satisfied in Debtor's *Second Supplemental Briefing. Jeremy Taylor Johnson's Second Supplemental Briefing*, fn. 3, ECF doc. 56.

### ii.  Actually Litigated

<u>Were the elements required to establish a Violation of State Securities law in the Riverside State Court Action actually litigated?</u>

In California, a default judgment satisfies the "actually litigated" requirement for the application of issue preclusion. *Younie v. Gonya (In re Younie),* 211 B.R. 367, 375 (B.A.P. 9th Cir. 1997), *aff'd*, 163 F.3d 609 (9th Cir. 1998). For a default judgment to be "actually litigated," the material factual issues must have been both raised in the pleadings and necessary to uphold the default judgment. *Gottlieb,* 141 Cal. App. 4th at 149. Therefore, the record in the prior proceeding must show an express finding upon the allegation for which preclusion is sought. However, "the express finding requirement can be waived if the court in the prior proceeding necessarily decided the issue." *In re Harmon,* 250 F.3d at 1248.

The material factual issues were raised in the Riverside Complaint. *Motion for Summary Judgment*, Ex. C. The Riverside Findings of Facts & Conclusions of Law ("FF&CL") entered by the Riverside Court that reads "Defendants sold unqualified, non-exempt securities to Plaintiff in in violation of Corporations Code §§ 251100 and 25503" show an express finding that Defendant sold unqualified, non-exempt securities to Plaintiff against California law, the specific fact to which preclusion is sought. *See Id.*, Ex. B.

Defendant argues in his *Second Supplemental Briefing* that the Riverside Judgment is too vague, unclear, and ambiguous to determine with certainty what issues raised in the Riverside Complaint were actually litigated and determined. *Defendant's Second Supplemental Briefing*, ECF doc. 56, 5:24-6:1. This argument is based on Defendant's assertion that this Court cannot consider the Riverside FF & CL, entered by the Riverside State Court, in its issue preclusion analysis. Specifically, Defendant argues that the Riverside FF & CL are not relevant to the issue preclusion analysis because issue preclusion considers the complaint and the judgment to determine what issues were raised and adjudicated in the Riverside Complaint, which are considered true because of the default judgment.

To support his argument that the Court cannot consider the Riverside FF & CL, Defendant cites *In re Lambert*, 233 Fed. Appx. 598, 599 (9th Cir. 2007), "If there is ambiguity about what was actually decided by the prior judgment, the preclusive effect should not apply." *Debtor's Second Supplemental Briefing,* 6:1-3. In *In re Lambert,* the Ninth Circuit Court of Appeals identified the ambiguity in the underlying arbitration award was where the arbitrator stated, "'a credible argument *can be made*' that the [plaintiffs] had presented clear and convincing evidence of an

-8-

intentional misrepresentation, which falls short of an actual finding." *In re Lambert*, 233 Fed. Appx. 598, 599 (9th Cir. 2007). (emphasis added)

Unlike Lambert, where the arbitrator's findings were ambiguous about whether the Lambert plaintiff's evidence was sufficient to meet their burden, the record here is clear that the Riverside Court found that Defendant was a control person and sold unqualified, non-exempt securities, in violation of California law. Thus, it was not that the bankruptcy court in *Lambert* could not look outside the arbitration award; instead, it was that the record itself was ambiguous.

Defendant also cites to Cal. Code Civ. Proc § 1911 to support his argument that the Court is limited to the four corners of the Riverside Judgment in its issue preclusion analysis. The statute, entitled *What deemed adjudged in a judgment*, states,

> That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, **or which was actually and necessarily included therein or necessary thereto**.

Cal Code Civ Proc § 1911 (emphasis added).

Plaintiff correctly notes that Defendant cites no case to support the sweeping proposition that the Court is confined solely to the language of the Riverside Judgment. In fact, several cases that applied issue preclusion considered not only the underlying state court judgment, but memorandums of decision and documents that were in the state court record, included to support summary judgment. *See Zambo v. Jeffries (In re Jeffries)*, 2018 Bankr. LEXIS 839; 2018 WL 1465795 (Bankr. CD Cal. March 22, 2018)(the bankruptcy court considered exhibits admitted in the state trial court record when granting summary judgment); *Heers v. Parsons (In re Heers)*, 529 B.R. 734, 739 (B.A.P. 9th Cir. 2015)(the bankruptcy court considered a probate court's Second Account Findings along with a final Surcharge Judgment and Bond Judgment when granting summary judgment); *Mann v. Intergulf-JMR (Parc One) LLC (In re Mann)*, 2020 Bankr. LEXIS 1542, *18 (B.A.P. 9th Cir. May 21, 2020)(the bankruptcy court considered the state court's "Rulings Following Default Prove-Up" along with the state court judgment when it awarded summary judgment). Indeed, it is common for a bankruptcy court to look to findings made by the state court, in conjunction with the state court judgment, when applying issue preclusion.

Plaintiff also points out that, in *In re Rodriguez,* the BAP upheld a Nevada bankruptcy court's decision to grant summary judgment based on issue preclusion, where it considered a (1) memorandum decision followed by (2) findings of facts and conclusions of law on liability, and (3) findings of facts and conclusions of law on damages and attorney's fees, when it found issue preclusion was appropriate.

Here, the record is clear that Plaintiff alleged in the Riverside Complaint that Defendant took actions and made representations that violated California securities law. *See Complaint*, ¶¶ 21; 22; 30; 34. Riverside Court made findings that Defendant and his brother were "control persons" of the corporate defendants Target Equity, LLC and GPA Enterprises, LLC under California Corporations Code §§ 25019 and 25504. *Motion for Summary Judgment*, Ex. B. The Riverside Court also found that Defendant, among others, sold unqualified securities in violations of Corporations Code §§ 25110 and 25503. *Id*. The record in the Riverside State Court Action thus

shows express findings upon the allegation for which Plaintiff sought preclusion in the Motion for summary judgment.

It is also important to note that a bankruptcy court is unable to question the state court's decision as it would amount to an impermissible collateral attack on the default judgment. *See Lopez v. Emerg. Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 106 (9th Cir. BAP 2007) ("Under state law, a litigant may not collaterally attack a final judgment for nonjurisdictional errors.").

### iii.  Necessarily Decided

<u>Were the elements required to establish a Violation of State Securities law in the Riverside State Court Action necessarily decided?</u>

An issue is "necessarily decided" when the issue's determination was not "entirely unnecessary" to the judgment in the initial proceeding. *Lucido v. Superior Court*, 51 Cal. 3d 335, 342 (1990).

The facts establishing the elements of violation of California securities law were raised in the Riverside Complaint and Riverside Court found in its FF & CL that Defendant and his brother were "control persons" of the corporate defendants Target Equity, LLC and GPA Enterprises, LLC under California Corporations Code §§ 25019 and 25504. *Motion for Summary Judgment*, Ex. B. The Riverside Court also found that Defendant, among others, sold unqualified securities in violations of Corporations Code §§ 25110 and 25503. *Id*. Determination of these facts were necessary to in order to secure a judgment in favor of Plaintiff. Therefore, the matter of Defendant's violation of California securities law were necessarily decided in the Riverside State Court Action.

### iv.  Final and on the Merits

<u>Is the Riverside Judgment for Violation of State Securities law in the Riverside State Court Action final and on the merits?</u>

A judgment is considered final, for purposes of issue preclusion, when it is free from direct attack and may not be relitigated. *People v. Sims*, 32 Cal. 3d 468, 486 (1982). California Rules of the Court require that an appeal be filed on or before the earliest of: 1) 30 days after clerk mails "Notice of Entry" or a file-stamped copy of the judgment, showing the mail date, 2) 30 days after the party seeking an appeal is served with "Notice of Entry" or a file-stamped copy of the judgment, accompanied by proof of service, or 3) 90 days after the judgment is entered. Cal. R. Ct. 8.822.

A judgment was rendered on the merits if, "the substance of the claim was tried and determined …" *Estate of Gump*, 1 Cal. App. 4th 582, 608 (Cal. Ct. App. 1991). The judgment against Defendant for violation of California securities law was signed by the State Court judge and entered on November 4, 2019. The judgment was rendered after a default prove-up hearing. The 90 day-limit expired on February 2, 2020.

Because the factual substance of the claim for violation of California securities law was determined as evidenced by the Riverside FF & CL, and the Riverside Court entered a judgment

in conformity with those findings, the judgment was on the merits. The judgment is final because the time for appeal has run.

Notably, Debtor concedes that this element is satisfied in Debtor's *Second Supplemental Briefing. Jeremy Taylor Johnson's Second Supplemental Briefing*, fn. 3, ECF doc. 56.

### v. Same Party or in Privity

<u>Is the party against whom preclusion is sought the same as, or in privity with, the party in the Riverside State Court Action?</u>

Defendant in the instant case was a named defendant in the Riverside State Court Action. Thus, this element is satisfied.

Notably, Debtor concedes that this element is satisfied in Debtor's *Second Supplemental Briefing. Jeremy Taylor Johnson's Second Supplemental Briefing*, fn. 3, ECF doc. 56.

    b.  *Policy Considerations in Application of Issue Preclusion*

The California Supreme Court has identified three policies underlying the doctrine of issue preclusion: "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Baldwin v. Kilpatrick (In re Baldwin)*, 249 F.3d 912, 919-920 (9th Cir. 2001).

### i. Integrity of Judicial System

With respect to the integrity of the judicial system, the Court finds that the possibility of inconsistent verdicts may undermine the public's confidence in the judicial system because, here, the State Court was fully capable and informed of the matters brought in the Riverside State Court Action. The public's confidence in the judicial system, and the principles of federalism that underlies Full Faith and Credit, would be undermined should this Court relitigate the question of whether Debtor engaged in securities fraud as relates to Plaintiff.

### ii. Judicial Economy

Moreover, application of issue preclusion in the present context would promote judicial economy because relying on the Riverside Judgment conserves judicial resources by relieving this Court from having to hold a trial to determine issues that were already decided and confirmed by the State Court.

### iii. Protection from Vexatious Litigation

Lastly, under the circumstances presented by this case, application of issue preclusion will protect Plaintiff from vexatious litigation because he should not be required to relitigate before this Court what was properly decided in the Riverside State Court Action.

*6. Issue Preclusion and In re Rodriguez*

In *In re Rodriguez*, judgment creditors, who were investors in failed business of which the Chapter 7 debtor was treasurer, chief financial officer (CFO), and a director, filed adversary complaint, seeking determination that prepetition judgment debt fell within the discharge exception under 11 U.S.C. § 523(a)(19), for any debt that is for the violation of securities laws. *In re Rodriguez*, 649 B.R. 773, 778-779 (B.A.P. 9th Cir. 2023).  The bankruptcy court, after conducting an issue preclusion analysis under Nevada law, granted summary judgment to the judgment creditors and excepted the judgment debt from debtor's discharge. *Id.* at 779.

Considering the appeal filed by the debtor, the Bankruptcy Appellate Panel of the Ninth Circuit explained that the *bankruptcy court's issue preclusion analysis was unnecessary* because the plain language of the State Court Decisions confirmed that the debtor had violated securities law and the resulting judgment was "for" a securities law violation. *Id.* at 782 (emphasis added).

> There is no need to look behind a judgment to a trial court's factual findings when the judgment is against the debtor (as opposed to a third party) and the judgment and underlying decision found the debtor violated a state or federal securities law. Accordingly, ***once a determination of a securities violation has been made, and proof of the entry of that order is tendered to the bankruptcy court, the debt is rendered nondischargeable under § 523(a)(19) without proof of any additional element or analysis***.

*In re Rodriguez*, 649 B.R. 773, 782 (B.A.P. 9th Cir. 2023) (emphasis added).

While *In re Rodriguez* seems to stand for the proposition that a bankruptcy court need not go through an element-by-element analysis of issue preclusion to find that a state court judgment for a securities violation is preclusive in a subsequent proceeding to determine dischargeability under 11 U.S.C. § 523(a)(19), the Court here has done so to address any concerns raised by Defendant that the state court record is inappropriate for judicial notice under FRE 201, or that the state court record is insufficient to accord preclusive effect to its findings.

*7. Damages*

As to the issue of damages, Plaintiff received a joint and several judgment in the amount of $1,465,948.96 against Debtor, among others, on November 4, 2019. *Motion for Summary Judgment*, Ex. A, 2:1-4.  Plaintiff argues that this judgment remains wholly unsatisfied.  Debtor did not address the issue of damages in his supplemental briefing.

Under California Code of Civil Procedure section 685.010, interest on a judgment accrues at 10%:

> (a)(1) Except as provided in paragraph (2), interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied.

>    (2)(A) For judgments entered on or after January 1, 2023, or where an application for renewal of judgment is filed on or after January 1, 2023, interest accrues at the rate of 5 percent per annum on the principal amount of a money judgment remaining unsatisfied.

CCP § 685.010.

Based on this, interest for a full year is $146,594.89, and for a single day: $401.62. Plaintiff calculates that, as of the December 14, 2023 hearing on the *Motion for Summary Judgment*, four years and 40 days have elapsed since the entry of the Riverside Judgment. As stated above, Debtor did not address the issues of damages despite being given the opportunity to do so.

Accordingly, the Court finds that the amount due and owing on the Riverside Judgment is $2,068,393.52: $1,465,948.96 as to the original amount, and $602,444.56 in post-judgment interest.

This decision constitutes the Court's findings of fact and conclusions of law under Federal Rules of Bankruptcy Procedure 9014 and 7052.

###

Date: December 15, 2023

*Magdalena Reyes Bordeaux*
Magdalena Reyes Bordeaux
United States Bankruptcy Judge